# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

KEVIN DEWAYNE TAYLOR, JR.,

    Plaintiff,

v.

AMBER ROBBINS, et al.,

    Defendants.

CASE NO. 2:25-cv-00582-RSL-DWC

ORDER DECLINING TO SERVE COMPLAINT

Plaintiff Kevin Dewayne Taylor, Jr., proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983. Dkts. 4, 5. Having reviewed and screened Plaintiff's complaint under 28 U.S.C. § 1915A, the Court declines to serve the complaint but provides Plaintiff leave to file an amended pleading by May 15, 2025, to cure the deficiencies identified herein.

## I.  BACKGROUND

Plaintiff, a pretrial detainee currently confined at King County Regional Justice Center ("KCRJC"), initiated this action concerning various conditions of confinement at that facility. Dkt. 5. Plaintiff organizes his claims into three counts. In Count I, Plaintiff alleges his Fourteenth

ORDER DECLINING TO SERVE COMPLAINT - 1

Amendment rights to equal protection and due process were violated when a female correctional officer allegedly engaged in gender discrimination by incorrectly reporting that Plaintiff was disruptive and failed to follow instructions in the KCRJC cafeteria. *Id.* at 9–12. In addition, Plaintiff alleges a violation of equal protection based on the lack of constant video surveillance in all areas of KCRJC. *Id.* at 12–15. Plaintiff also asserts a due process claim in Count II, alleging he was placed in isolated housing for three days without a hearing or adequate opportunity to be heard. *Id.* at 16–20. Finally, in Count III, Plaintiff alleges his First Amendment rights were violated when, in various circumstances, KCRJC correctional officers "could" read Plaintiff's legal mail and legal documents. *Id.* at 18, 21–27.

Plaintiff names twenty individuals as defendants in this action and represents that each is an employee or officer at KCRJC: Amber Robbins (jail official), Gill (sergeant), Allen Nance (director), C Frazier (major), Michael Taylor (major), Steve Larsen (deputy director), Jennifer Albright (deputy director), Manny (commander), Currier (sergeant), Oreke (jail official), B Lathan (jail official), B Lassiter (jail official), Andrea Williams (mailroom supervisor), Graves (sergeant), Jasim (jail official), Hamman (jail official), LaCousier (jail official), Appling (jail official), B Kipchumba (jail official), and M Badaru (jail official). *Id.* at 4–8. He seeks monetary damages and injunctive relief for his claims. *Id.* at 28.

## II.   SCREENING STANDARD

Under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant

ORDER DECLINING TO SERVE COMPLAINT - 2

who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, the pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III.  DISCUSSION

Upon review, the Court finds several deficiencies in the complaint. To begin, it is unclear whether Plaintiff is suing defendants in their individual or official capacities. However, under either construction, his complaint is deficient and must be cured before he may proceed in this action.

**A.    Individual Capacity § 1983 Claims**

To proceed under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a "person" acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Thus, the first step in pleading an individual capacity § 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). On step two, a plaintiff must allege facts showing how an individual defendant caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Plaintiff's individual capacity § 1983 claims are deficient at both steps. At the first step, Plaintiff has not plausibly alleged a violation of his Fourteenth Amendment rights to due process

ORDER DECLINING TO SERVE COMPLAINT - 3

and equal protection or a violation of his First Amendment rights regarding legal mail. On step two, Plaintiff does not sufficiently allege personal participation by Defendant Oreke, and, for the majority of defendants, he attempts to impose liability based on their supervisory positions.

        1. <u>Procedural Due Process (Counts I and II)</u>

First, Plaintiff does not plausibly allege a procedural due process violation by Defendants Oreke or Gill in Counts I and II. Dkt. 5 at 9–20. To show a procedural due process violation occurred, a plaintiff must allege two elements: (1) the deprivation of a constitutionally protected liberty or property interest, and (2) the denial of adequate procedural protections. *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002) (citing *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). A protected interest may arise directly from the Constitution, "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).

For pretrial detainees, the due process clause of the Fourteenth Amendment prohibits restrictions on liberty that amount to punishment prior to an adjudication of guilt. *Bell v. Wolfish,* 441 U.S. 520, 535–37 (1979). To determine whether a restriction constitutes punishment, courts consider whether the restriction caused a significant hardship or disability compared to the ordinary conditions of confinement and whether it was imposed for a legitimate nonpunitive purpose rather than to punish. *See Block v. Rutherford*, 468 U.S. 576, 584–85 (1984); *Kingsley v. Hendrickson*, 576 U.S. 389, 398–99 (2015). While convicted prisoners must demonstrate that a restriction imposes an atypical and significant hardship under *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Ninth Circuit has held that pretrial detainees may have a broader liberty interest in avoiding punitive or excessive restrictions without due process. *See Mitchell v. Dupnik*, 75

F.3d 517, 523–25 (9th Cir. 1996); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205–06 (9th Cir. 2008).

Not every inconvenience or restriction during pretrial detention amounts to punishment or requires procedural protections as a matter of federal constitutional law. *Bell,* 441 U.S. at 537. Minor restrictions or temporary, short-term losses of privileges are considered *de minimis* and do not rise to the level of constitutional violations. *Id.* at 539 n.21; *Peyton v. Cnty. of Ventura*, No. 17-cv-3202-VAP-AJW, 2017 WL 6816355, at *2–3 (C.D. Cal. Aug. 23, 2017), *report and recommendation adopted by* 2018 WL 317791 (C.D. Cal. Jan. 3, 2018). In other words, procedural due process protections, such as an opportunity to be heard, are triggered only where the restriction is sufficiently severe, excessive, or punitive in nature. *See Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004).

In Count I, Plaintiff alleges Defendant Oreke violated his due process rights by failing to "call a code" when she incorrectly reported Plaintiff was being disruptive and not following instructions in the cafeteria. Dkt. 5 at 12–13. But failure to follow internal procedures or falsely reporting misconduct, without more, does not amount to a procedural due process violation by Defendant Oreke. *See Paul v. Davis*, 424 U.S. 693 (1976) (holding government action that harms an individual's reputation, but does not deprive them of liberty or property, does not implicate the Due Process Clause). Although Plaintiff alleges in Count II that he was placed in isolated housing after Defendant Oreke made her report and was not provided a hearing regarding that placement, he does not allege sufficient facts demonstrating Defendant Oreke was personally involved in denying Plaintiff procedural protections such as an opportunity to be heard. *Id.* at 16, 18–20; *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on

ORDER DECLINING TO SERVE COMPLAINT - 5

individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

Next, in Count II, Plaintiff also alleges Defendant Gill violated his due process rights when he "left [Plaintiff] in isolated housing…for 3 days without a hearing." Dkt. 5 at 16, 18. However, Plaintiff's complaint does not provide enough detail to determine whether his placement in isolated housing was a sufficiently severe, excessive, or punitive restriction to trigger procedural due process protections. In particular, the complaint does not describe what "isolated housing" entails or what specific restrictions Plaintiff suffered while there, and courts have consistently held that temporary and minor restrictions do not constitute constitutional violations. *See Peyton*, 2017 WL 6816355, at *2–3 (collecting cases).

In addition, it is not clear whether Plaintiff alleges he was placed in isolated housing for a *total* of three days without hearing or if he was in isolated housing for three days *before* a hearing was provided. *See generally Palmer v. Santa Cruz Sheriff's Dep't*, No. 19-CV-04629-EMC, 2020 WL 264336, at *3 (N.D. Cal. Jan. 17, 2020) (noting that inmates are entitled to "an informal nonadversary hearing within a reasonable time" after being placed in administrative segregation). Without clear allegations demonstrating the duration of Plaintiff's placement in isolated housing and what procedural protections—if any—he received regarding that placement, Plaintiff has failed to plausibly allege a procedural due process violation.

Finally, the complaint does not indicate the reason given for Plaintiff's placement in isolated housing as required to show whether the restriction was imposed as punishment or as an incident of a legitimate governmental purpose. This distinction is critical because the procedural protections owed to pretrial detainees largely depends on the purpose for the restriction. *See Block*, 468 U.S. at 584–85; *Mitchell*, 75 F.3d at 522–25; *Demery*, 378 F.3d at 1028–29; *see also*

ORDER DECLINING TO SERVE COMPLAINT - 6

1   *Palmer*, 2020 WL 264336, at *3 (discussing procedural protections for administrative and
2   punitive segregation). Without more information, Plaintiff has failed to show whether his
3   temporary placement in isolated housing without a hearing was punitive in nature or merely an
4   administrative measure within Defendant Gill's discretion. *Stevenson v. Jones,* 254 F. Supp. 3d
5   1080, 1093 (N.D. Cal. 2017) ("For example, jailers 'must be able to take steps to maintain
6   security and order' at the jail, so restraints that are reasonably related to these goals are not,
7   without more, unconstitutional punishment.") (quoting *Bell*, 441 U.S. at 540).

8         In any amended pleadings, Plaintiff should include a due process claim only if he can
9   allege facts showing that his placement in isolated housing imposed a sufficiently serious or
10  punitive restriction to trigger constitutional protections, and that he was denied the procedural
11  safeguards required under the Fourteenth Amendment. Plaintiff must provide sufficient detail
12  about the conditions of isolated housing, the duration of his placement in isolated housing,
13  whether (and when) he received notice or hearing for that restriction, and the stated reason for
14  the restriction. Further, Plaintiff should only name individuals as defendants if he can allege
15  specific facts demonstrating their personal participation in the alleged denial of procedural due
16  process.

17      2.  <u>Equal Protection (Count I)</u>

18        Plaintiff also fails to plausibly allege a violation of his rights under the Equal Protection
19  Clause of the Fourteenth Amendment in Count I. The Equal Protection Clause "is essentially a
20  direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v.*
21  *Cleburne Living Center,* 473 U.S. 432, 439 (1985). Allegations of different or inconsistent
22  treatment are not enough to demonstrate a violation of equal protection. *Griffin v. County Sch.*
23  *Bd. of Prince Edward County,* 377 U.S. 218, 230 (1964). To state an equal protection claim, a
24

ORDER DECLINING TO SERVE COMPLAINT - 7

plaintiff must plausibly allege that a defendant acted with an intent or purpose to discriminate against him based on his membership to a protected class. *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotations and citations omitted). Mere speculation about a discriminatory motive, without supporting factual allegations, does not satisfy this standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (rejecting conclusory allegations of discriminatory intent).

Plaintiff first alleges Defendant Oreke, who is a woman, engaged in unlawful gender discrimination by making an inaccurate report about Plaintiff's misconduct in the cafeteria. Dkt. 5 at 9, 11–12. Plaintiff alleges Defendant Oreke acted with discriminatory animus because "I'm a man and she's a woman…." *Id.* at 12. This conclusory allegation is insufficient to show Defendant Oreke engaged in unconstitutional gender discrimination in violation of Plaintiff's right to equal protection. Any equal protection claim must put forth sufficient facts demonstrating that Defendant Oreke acted with the purpose of discriminating against Plaintiff because of his sex.

Although his allegations are not a portrait of clarity, Plaintiff also alleges an equal protection violation because all areas of KCRJC are not covered by constant video surveillance. *Id.* at 13–15, 29. To the extent Plaintiff alleges a violation of equal protection by way of video surveillance, Plaintiff should reassert this claim in any amended pleadings only if he can plausibly allege that a defendant acted with an intent or purpose to discriminate against him based on his membership to a protected class.

    3. <u>First Amendment Legal Mail (Count III)</u>

Plaintiff does not state a First Amendment violation based on his allegations about his legal mail and legal documents in Count III. Specific restrictions on prisoner legal mail have

ORDER DECLINING TO SERVE COMPLAINT - 8

been approved by the Supreme Court and Ninth Circuit. For example, prison officials may require legal mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection. *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981). Incoming mail from the prisoner's attorney is considered "legal mail," but incoming mail from the courts is not "legal mail." *See Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). Whether legal mail may be opened outside the inmate's presence, however, is an open question in the Ninth Circuit. *See Sherman*, 656 F.2d at 528; *cf. Mann v. Adams*, 846 F.2d 589, 590–91 (9th Cir. 1988) (per curiam) (concluding mail from public agencies, public officials, civil rights groups, and news media may be opened outside the prisoner's presence in light of security concerns). Even so, the Ninth Circuit has held an isolated instance or occasional opening of legal mail outside an inmate's presence does not rise to the level of a constitutional violation. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989).

Here, Plaintiff does not allege any legal mail was opened outside his presence. Instead, he recounts several circumstances where KCRJC staff could have read his legal mail or legal documents, including during visual inspections of incoming mail, cell searches, and transportation to and from KCRJC. Dkt. 5 at 18, 21–27. Plaintiff's mere speculation that various defendants may have read his legal mail or legal documents does not establish a First Amendment violation.

    4.   <u>Supervisory Liability (All Counts)</u>

In every count, Plaintiff seeks to hold numerous defendants liable based on their supervisory positions. However, § 1983 claims may not be brought on the theory a supervisor is vicariously liable for the acts of his or her subordinates. *See Polk County v. Dodson*, 454 U.S.

ORDER DECLINING TO SERVE COMPLAINT - 9

312, 325 (1981); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must show the supervisor (1) personally participated in or directed the alleged harm or (2) knew of a risk of harm to the plaintiff and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

Plaintiff alleges the following defendants are liable for the acts of their subordinates given their supervisory roles: Defendants Nance, Frazier, Taylor, Larsen, Albright, and Manny. Dkt. 5 at 9–27. But vicarious liability is not a viable legal theory for a § 1983 claim. As a result, Plaintiff's § 1983 claims against these supervisory defendants are deficient. In any amended pleadings, Plaintiff should only name an individual as a defendant if he can put forth sufficient facts demonstrating their personal participation in causing his alleged constitutional injuries. Sweeping allegations against all defendants will not suffice. Instead, Plaintiff must identify the way in which the actions or inactions of each defendant caused him a specific constitutional injury.

**B.      Official Capacity § 1983 Claims**

Finally, to the extent Plaintiff asserts his § 1983 claims against defendants in their official capacities or against King County, those claims are deficient. Although not listed in the caption or in the defendant section of the complaint, Plaintiff lists King County as a defendant for each of his claims. In addition, King County is the real party in interest for any official capacity claim Plaintiff raises against King County officials and employees. *See Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

ORDER DECLINING TO SERVE COMPLAINT - 10

1   Importantly, a county "cannot be held liable solely because it employs a tortfeasor—or,
2   in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory." *Monell*,
3   436 U.S. at 691. To state a claim against a county, a plaintiff must show the county's employees
4   or agents acted through an official custom, pattern, or policy permitting deliberate indifference
5   to, or violations of, the plaintiff's civil rights. *Id.* at 690–91. A plaintiff must allege facts
6   sufficient to show a county defendant had a policy or custom that was the moving force behind
7   the alleged constitutional deprivation. *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).
8   A single incident of unconstitutional action is generally insufficient to demonstrate the existence
9   of an official county policy or custom. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154
10  (9th Cir. 2021).

   In each count, Plaintiff alleges King County is responsible for the acts of its "agents,"
which is akin to the nonviable respondeat superior theory of liability. Dkt. 5 at 14 (Count I), 20
(Count II), and 25 (Count III). Also, throughout his complaint, Plaintiff asserts that single
incidents of alleged constitutional deprivations represent official customs and policies held by
King County. *Id.* at 9–27. In sum, Plaintiff has not alleged facts sufficient to demonstrate county
liability for his official capacity § 1983 claims. If Plaintiff intends to pursue official capacity §
1983 claims against King County or its officials and employees, he must allege facts sufficient to
show an official county policy or custom was the moving force behind any constitutional
violation he suffered.

## IV. INSTRUCTIONS TO PLAINTIFF

   Due to the deficiencies described above, the Court will not serve Plaintiff's complaint. If
Plaintiff intends to pursue this § 1983 civil rights action, he must file an amended complaint and
within it, he must write a short, plain statement telling the Court: (1) the constitutional right

ORDER DECLINING TO SERVE COMPLAINT - 11

Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Each claim for relief must be simple, concise, and direct.

Plaintiff shall present the amended complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should contain the same case number, and it may not incorporate any part of the previous complaints by reference. The amended complaint will act as a complete substitute for any previously filed complaint, and not as a supplement. Plaintiff should not attach exhibits to the amended complaint and any exhibit will not be considered as part of the amended complaint.

The Court will screen the amended complaint to determine whether it contains factual allegations linking each defendant to the alleged violations of Plaintiff's rights. If Plaintiff fails to file an amended complaint or fails to adequately address the issues raised herein on or before May 15, 2025, the undersigned will recommend dismissal.

The Clerk is directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint along with a copy of this Order.

Dated this 15th day of April, 2025.

David W. Christel
United States Magistrate Judge

ORDER DECLINING TO SERVE COMPLAINT - 12