UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN DEWAYNE TAYLOR, JR.,

          Plaintiff,

    v.

AMBER ROBBINS, et al.,

          Defendants.

CASE NO. 2:25-cv-00582-RSL-DWC

ORDER DECLINING TO SERVE AMENDED COMPLAINT

Plaintiff Kevin Dewayne Taylor, Jr., proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983. Dkts. 4, 5. Having reviewed and screened Plaintiff's amended complaint (Dkt. 7) under 28 U.S.C. § 1915A, the Court declines to direct service and, instead, provides Plaintiff leave to file a second amended complaint by June 19, 2025, to cure the deficiencies identified herein.

## I.  BACKGROUND

Plaintiff, a pretrial detainee currently confined at King County Regional Justice Center ("KCRJC"), initiated this action concerning various conditions of confinement at that facility. Dkt. 7. The claims in Plaintiff's amended complaint are organized into two counts. In Count I, Plaintiff alleges his rights under the Due Process Clause of the Fourteenth Amendment were

violated when he was placed in isolated housing for three days without a hearing. *Id.* at 9–12. In Count II, Plaintiff alleges his First Amendment rights were violated when, in various circumstances, KCRJC staff and correctional officers may have read Plaintiff's legal mail and legal documents. *Id.* at 14–16, 18–20.

Plaintiff names twelve individuals as defendants in his amended complaint and represents that each is an employee or officer at KCRJC: Andrea Williams (mailroom supervisor), Amber Robbins (jail official), Graves (sergeant), P LaCousier (jail official), Appling (jail official), M Badaru (jail official), Allen Nance (director), Gill (sergeant), B Kupchumba (jail official), T Harris (jail official), Oreke (jail official), and Manny (commander). *Id.* at 5–8. While not listed in the "defendant information" section, Plaintiff also identifies King County as a defendant for both Counts of his amended complaint. *Id.* at 9, 15.

## II.   SCREENING STANDARD

Under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, the pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

ORDER DECLINING TO SERVE AMENDED
COMPLAINT - 2

After screening a *pro se* complaint, the Court must generally grant leave to file an amended complaint if there is a possibility the pleading's deficiencies may be cured through amendment. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir.1992); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988)).

However, once a *pro se* plaintiff has been given leave to amend and instructed on how to cure the pleading deficiencies, the Court may properly dismiss an action based on deficiencies that remain. *See Swearington v. California Dep't of Corr. & Rehab.*, 624 F. App'x 956, 959 (9th Cir. 2015) (finding the district court did not abuse its discretion in dismissing without leave to amend because *pro se* prisoner plaintiff "did not cure the complaint's deficiencies despite the district court's specific instructions about how to do so") (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (en banc) (setting forth standard of review and explaining that leave to amend should be given unless the deficiencies in the complaint cannot be cured by amendment) and *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint.")).

### III.  DISCUSSION

Upon review, the Court finds several deficiencies in the amended complaint. It remains unclear whether Plaintiff is suing defendants in their official or individual capacities. *See* Dkt. 7; *see also* Dkt. 6 at 3 (finding same deficiency in initial complaint). Under either construction, the amended complaint is deficient and must be cured before Plaintiff may proceed in this action. More significantly, however, (A) Plaintiff's Fourteenth Amendment Procedural Due Process

claims (Count I) remain deficient, (B) he has not alleged a violation of his First Amendment rights (Count II), (C) he has not demonstrated personal participation of supervisory defendants, and (D) he has failed to establish county liability.

**A.      Fourteenth Amendment Procedural Due Process (Count I)**

First, Plaintiff has not cured all the deficiencies in his Procedural Due Process claims against Defendants Oreke and Gill that the Court identified in its prior screening order.

> To show a procedural due process violation occurred, a plaintiff must allege two elements: (1) the deprivation of a constitutionally protected liberty or property interest, and (2) the denial of adequate procedural protections. *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002) (citing *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). A protected interest may arise directly from the Constitution, "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).
>
> For pretrial detainees, the due process clause of the Fourteenth Amendment prohibits restrictions on liberty that amount to punishment prior to an adjudication of guilt. *Bell v. Wolfish,* 441 U.S. 520, 535–37 (1979). To determine whether a restriction constitutes punishment, courts consider whether the restriction caused a significant hardship or disability compared to the ordinary conditions of confinement and whether it was imposed for a legitimate nonpunitive purpose rather than to punish. *See Block v. Rutherford*, 468 U.S. 576, 584–85 (1984); *Kingsley v. Hendrickson*, 576 U.S. 389, 398–99 (2015). While convicted prisoners must demonstrate that a restriction imposes an atypical and significant hardship under *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Ninth Circuit has held that pretrial detainees may have a broader liberty interest in avoiding punitive or excessive restrictions without due process. *See Mitchell v. Dupnik*, 75 F.3d 517, 523–25 (9th Cir. 1996); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205–06 (9th Cir. 2008).
>
> Not every inconvenience or restriction during pretrial detention amounts to punishment or requires procedural protections as a matter of federal constitutional law. *Bell,* 441 U.S. at 537. Minor restrictions or temporary, short-term losses of privileges are considered *de minimis* and do not rise to the level of constitutional violations. *Id.* at 539 n.21; *Peyton v. Cnty. of Ventura*, No. 17-cv-3202-VAP-AJW, 2017 WL 6816355, at *2–3 (C.D. Cal. Aug. 23, 2017), *report and recommendation adopted by* 2018 WL 317791 (C.D. Cal. Jan. 3, 2018). In other words, procedural due process protections, such as an opportunity to be heard, are triggered only where the restriction is sufficiently severe, excessive, or punitive in nature. *See Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004).

Dkt. 6 at 4–5.

Plaintiff's amended complaint cures some of the identified deficiencies. For example, Plaintiff provides more information about the restrictions placed on him while in isolated housing, stating his "out of cell" time was reduced from six hours to one. Dkt. 7 at 11; *see* Dkt. 6 at 6–7. In addition, Plaintiff clearly states the reason given for his placement in isolated housing. *Id.* Specifically, Plaintiff alleges that Defendants Gill and Oreke placed him in isolated housing as punishment following Defendant Oreke's report that Plaintiff was being disruptive. Dkt. 7 at 9–10.

Nevertheless, Plaintiff failed to cure other deficiencies identified by the Court. In particular, it remains unclear "whether Plaintiff alleges he was placed in isolated housing for a *total* of three days without hearing or if he was in isolated housing for three days *before* a hearing was provided." Dkt. 6 at 6 (emphasis in original). In addition, Plaintiff's allegations against Defendants Gill and Oreke are limited to their role in placing him in isolated housing and why Plaintiff believes the punishment was unjustified. *See* Dkt. 7 at 9–12. Plaintiff fails to allege sufficient facts demonstrating that Defendants Gill and Oreke were "personally involved in denying Plaintiff procedural protections such as an opportunity to be heard" in the period following his initial placement in isolated housing. Dkt. 6 at 5. Without these additional details, it is unclear what—if any—procedural protections Plaintiff received regarding his placement in isolated housing and what specific role—if any—Defendants Gill and Oreke had in depriving Plaintiff of those protections. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

Additionally, Plaintiff makes repeated reference to internal policies and procedures that were not followed with regard to his placement in isolated housing, such as the requirements for

ORDER DECLINING TO SERVE AMENDED
COMPLAINT - 5

KCRJC staff to call in codes when reporting inmate infractions, to provide "24-hour infraction hearings," and to impose different restrictions based the level of infraction imposed (*i.e.*, general, major, or serious infractions). Dkt. 7 at 9–12. But "violations of internal policies do not necessarily give rise to constitutional violations.".*Cotton v. Cnty. of Santa Barbara*, No. CV 03-7652 PSG (RZX), 2010 WL 11508619, at *2 (C.D. Cal. Apr. 19, 2010), *aff'd sub nom. Cotton v. Martinez*, 475 F. App'x 207 (9th Cir. 2012) (citing *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984)). Internal policies often protect more than the constitutional minimum. *See, e.g.*, *Nesby v. City of Oakland*, No. 05–3555, 2007 WL 831765, at *21 (N.D. Cal. Mar. 19, 2007).

Thus, as stated in the prior screening order:

> In any amended pleadings, Plaintiff should include a due process claim only if he can allege facts showing that his placement in isolated housing imposed a sufficiently serious or punitive restriction to trigger constitutional protections, and that he was denied the procedural safeguards required under the Fourteenth Amendment. Plaintiff must provide sufficient detail about the conditions of isolated housing, the duration of his placement in isolated housing, whether (and when) he received notice or hearing for that restriction, and the stated reason for the restriction. Further, Plaintiff should only name individuals as defendants if he can allege specific facts demonstrating their personal participation in the alleged denial of procedural due process.

Dkt. 6 at 7. In his second amended complaint, Plaintiff should also refrain from including detailed allegations about KCJRC policies and instead focus on stating directly the facts and circumstances giving rise to an alleged violation of his Procedural Due Process rights.

**B.    First Amendment Legal Mail (Count II)**

Plaintiff does not allege facts demonstrating a violation of his First Amendment rights in Count II of his amended complaint. Instead, as he did in his prior pleadings, Plaintiff recounts several circumstances in which he believes KCRJC staff could have read his legal mail and/or legal documents, such as during visual inspections of incoming mail, after his mail was digitally scanned, and during searches of Plaintiff's cell wherein legal documents he received in the mail

ORDER DECLINING TO SERVE AMENDED
COMPLAINT - 6

were located. Dkt. 7 at 14–16, 18–20; *see also* Dkt. 6 at 9 (finding same deficiency in initial complaint). As explained, "Plaintiff's mere speculation that various defendants may have read his legal mail or legal documents does not establish a First Amendment violation." Dkt. 6 at 9. Moreover, the constitutional protections for inmate mail do not restrict prison officials from viewing legal documents received in the mail incident to a cell search. *See generally Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) (prisoners have no right to privacy in their cells). Indeed, the Ninth Circuit has held an isolated instance or occasional opening of legal mail outside an inmate's presence does not rise to the level of a constitutional violation. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989).

Therefore, the Court finds it unlikely Plaintiff will be able to cure the deficiencies in Count II; as a result, he should not include a First Amendment legal mail claim in any amended pleadings unless he asserts allegations to overcome these deficiencies.

**C.     Supervisory Liability (Both Counts)**

In both Counts of his amended complaint, Plaintiff seeks to hold Defendants Nance and Manny liable based on their supervisory positions. However, as Plaintiff was advised:

> [Section] 1983 claims may not be brought on the theory a supervisor is vicariously liable for the acts of his or her subordinates. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must show the supervisor (1) personally participated in or directed the alleged harm or (2) knew of a risk of harm to the plaintiff and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

Dkt. 6 at 9–10. Rather than alleging facts sufficient to show each defendant's personal participation in violating his constitutional rights, Plaintiff makes conclusory statements about Defendants Nance and Manny's liability under § 1983. For example, Plaintiff states both of these defendants failed to adequately train and supervise KCJRC staff. Dkt. 7 at 11, 18, 20. He also

ORDER DECLINING TO SERVE AMENDED
COMPLAINT - 7

asserts that Defendant Nance's directorial and decision-making authority makes him "directly liable" for his employee's actions. *Id.* Plaintiff's conclusory allegations against Defendants Nance and Manny are not sufficient to hold either supervisory defendant liable under § 1983, and it is unlikely Plaintiff will be able to cure these defects in any amended pleadings.

**D.    County Liability (Counts I and II)**

Finally, to the extent Plaintiff asserts Counts I and II against King County, his claims are deficient in a manner not likely to be cured through amendment. In particular, Plaintiff alleges "King County is liable being the respondeat superior based on the contract agreement it has with the [KCJRC] director and employees working under this entity." Dkt. 7 at 11; *see also id.* at 20 (similar). However, King County cannot be held liable simply because it employs someone who violated Plaintiff's constitutional rights; that is, King County "cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 11 (quoting *Monell*, 436 U.S. at 691). It is unlikely Plaintiff will be able to cure these defects in any amended pleadings.

**IV.    INSTRUCTIONS TO PLAINTIFF**

In summary, it appears Plaintiff may be able to cure his pleading's deficiencies with respect to his Fourteenth Amendment Procedural Due Process claim (Count I) against Defendants Gill and Oreke in their individual capacities. However, as it is unlikely he will be able to cure in a second amended complaint his deficient First Amendment (Count II), supervisory, and county defendant claims, Plaintiff should not reassert his First Amendment legal mail claim against any defendant, nor should Plaintiff include supervisory and county defendants. Inclusion of these claims and defendants will hinder Plaintiff in filing a serviceable second amended complaint and may result in a recommendation this action be dismissed for failure to cure all his deficiencies and for failure to state a claim.

Due to the deficiencies described above, the Court will not serve Plaintiff's amended complaint. If Plaintiff intends to pursue this § 1983 civil rights action, he must file a second amended complaint and within it, he must write a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Each claim for relief must be simple, concise, and direct.

Plaintiff shall present the second amended complaint on the form provided by the Court. The second amended complaint must be legibly rewritten or retyped in its entirety, it should contain the same case number, and it may not incorporate any part of the previous complaints by reference. The second amended complaint will act as a complete substitute for any previously filed complaint, and not as a supplement. Plaintiff should not attach exhibits to the second amended complaint and any exhibit will not be considered as part of the pleading.

The Court will screen the second amended complaint to determine whether it contains factual allegations linking each defendant to the alleged violations of Plaintiff's rights. If Plaintiff fails to file a second amended complaint or fails to adequately address the issues raised herein on or before June 19, 2025, the undersigned may recommend dismissal of this action.

The Clerk is directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint along with a copy of this order and the prior screening order (Dkt. 6).

Dated this 20th day of May, 2025.

David W. Christel
United States Magistrate Judge